ERIC C. HUDSON,

                         Plaintiff,

        v.                                              Case No. 26-cv-627-pp

AMY VAUGHN, *et al.*,

                         Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT
UNDER 28 U.S.C. §1915A, DENYING WITHOUT PREJUDICE PLAINTIFF'S
MOTION TO APPOINT COUNSEL (DKT. NO. 9) AND DENYING PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER (DKT. NO. 9)**

---

Plaintiff Eric C. Hudson, who was incarcerated at the Waukesha County Jail when he filed his complaint[1] and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, his motion to appoint counsel and for a protective order, dkt. no. 9, and screens his complaint, dkt. no. 1.

## I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds

---

[1] On April 20, 2026, the plaintiff notified the court that he had been released from custody. Dkt. No. 6.

1

exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On April 16, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $11.50. Dkt. No. 5. The court received that fee on May 5, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

2

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff has sued Waukesha County Jail Administrator Amy Vaughn, Waukesha County Sheriff Eric Severson, Lieutenant Chamberlain, Probation and Parole Agent Elizabeth Vargas, Corrections Field Supervisor Karen Sharp, DOC Regional Chief Vicki M. Seibel-Garvey, ProHealth Waukesha Memorial Hospital, DOC Assistant Regional Chief Karen Schmitz and John/Jane Does (sued as five Waukesha County Jail staff). Dkt. No. 1 at 2-3.

The plaintiff alleges that at about 11:00 p.m. on February 24, 2026, he was sleeping in his cell at the Waukesha County Jail when Officer Cinnamon (not a defendant) woke him by banging on the cell door window with a flashlight and screaming at him to uncover his vent. Id. at 4. The plaintiff states that he looked at his vent, saw that it wasn't covered, thought nothing of it and went back to sleep, only to be woken up again by Officer Cinnamon rapping on his cell door window with a flashlight. Id. at 5. The plaintiff

3

allegedly started to have an anxiety attack, so he pushed the cell intercom and requested medical backup because he was having trouble breathing. Id. He states that medical backup didn't arrive, and that his anxiety attack "came and went." Id.

The plaintiff alleges that at about 11:40 p.m.—about forty minutes after he requested medical backup—defendants John Does five jail staff members (one lieutenant and four officers) arrived at his cell and told him to turn around and place his hands behind his back because he had a professional visit. Id. The plaintiff allegedly said, "there's no way;" then they said they were there to take him to "medical," so he placed his hands behind his back and out of the open trap of his cell door. Id. at 5-6. The Doe officers allegedly escorted the plaintiff from his cell to the top of the stairs. Id. at 6. The plaintiff states that after he was led down about three stairs, the officer holding his right arm said, "Oh shit! You're falling." Id. The three officers escorting the plaintiff allegedly let go. Id. The plaintiff states that he already was leaning forward from the handcuffs and he tried to maintain traction, but he tumbled headfirst down about seventeen cement stairs. Id. The plaintiff states that he sustained injuries from the fall, including a cracked skull, his left eye socket was pushed back out of place, multiple stitches in left eyebrow, deep cuts on left hand, broken left rib, severe concussion, bone displacement on the left side of his nose and damage to collarbones and shoulders. Id. After he reached the bottom of the stairs, the Doe officers allegedly physically assaulted him. Id. The plaintiff states that he passed out shortly after that and that he has no memory of most of the fall and of being rushed to the Waukesha Memorial Hospital. Id. at 6-7.

The plaintiff alleges that he woke up in the hospital on March 1, 2026 after having been in a coma for three days and that he remained in the hospital for an additional three days. Id. at 7. He states that on March 3, 2026, he was told that he no longer was in custody and could go home. Id. The plaintiff allegedly went home to his family and recovered for about a week. Id.

The plaintiff alleges that he contacted defendant Elizabeth Vargas, his parole officer, who told him to report to her office on March 11, 2026, which he did. Id. He states that when he arrived at her office, he was met by City of Milwaukee police officers who arrested him on two new allegations based on the February 24, 2026 incident at the jail: (1) that he violated jail rules and acted in a disorderly manner and (2) that he physically resisted officers when they tried to secure him. Id. at 7-8. The plaintiff asserts that the next day, two detectives from the Washington County Police Department interviewed him at the Waukesha County Jail about the February 24, 2026 incident. Id. The plaintiff states that he hasn't heard back from the Washington County Police Department on the matter. Id.

The plaintiff claims that the five Doe officers violated his constitutional rights when they deliberately allowed him to fall down the stairs, physically assaulted him and then conspired to lie about the incident to cover up their actions. Id. at 8-9. He also claims that defendants Chamberlain, Vaughn and Severson conspired with the Doe officers to lie about the incident to cover up the Doe officers' wrongful actions in violation of the plaintiff's constitutional rights. Id. at 9. The plaintiff claims that defendant ProHealth Waukesha Memorial Hospital violated his constitutional rights when staff failed to contact local authorities after the plaintiff entered the hospital at about 12:30 a.m. on February 25, 2026 in a coma, severely battered and bruised. Id. He claims that

the hospital conspired to cover up the incident. Id. The plaintiff claims that defendants Vargas, Sharp, Seibel-Garvey and Schmitz violated his constitutional rights when they lied about the incident to cover up the wrongful actions of jail staff. Id. The plaintiff also asserts that they retaliated against him "by placing [him] back into custody (on a PO hold) for 2 bogus allegations that they claim happened on 2/24/2026, at the Waukesha County Jail." Id. at 9-10.

The plaintiff seeks monetary damages and injunctive relief. Id. at 11-12.

C.    Analysis

The court assumes that the plaintiff was a pretrial detainee when he was confined at the Waukesha County Jail. The Fourteenth Amendment applies to excessive force claims brought by pre-conviction detainees and the standard is solely objective. Hardeman v. Curran, 933 F.3d 816, 822 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 396-97. Objective reasonableness turns on the "facts and circumstances of each particular case." Kingsley, 576 U.S. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). The plaintiff may proceed on an excessive force claim against the Doe officers in their individual capacities based on allegations that they let him fall down the stairs, then physically assaulted him.

The plaintiff also alleges that after the incident, the defendants conspired to cover up the Doe defendants' actions. The Court of Appeals for the Seventh Circuit has recognized a §1983 claim where a defendant tries to cover up unlawful conduct, but the basis for such a claim lies in the denial of a plaintiff's access to the courts. See Kies v. City of Aurora, 149 F. Supp. 2d 421, 423 (N.D. Ill. 2001) (citing Vasquez v. Hernandez, 60 F.3d 325, 329 (7th Cir.

6

1995)). "[C]oncealment of constitutional violations, such as false arrest, excessive force, and malicious prosecution, are insufficient to raise a separate constitutional violation unless the victim is deprived his or her right to access to the courts." Id. (quoting Johnson v. Chi. Police Officer, No. 99-C-7396, 2000 WL 310320, at *2 (N.D. Ill. Mar. 24, 2000)). The plaintiff's allegations regarding an alleged conspiracy are conclusory and he has not stated that the defendants' alleged cover up has hindered his right of access to the courts. He has not stated a conspiracy claim. See Murphy v. Smith, Case No. 12-cv-841, 2014 WL 12683572, at *1-3 (S.D. Ill. Oct. 9, 2014) (dismissing Fourteenth Amendment conspiracy claim where jailers allegedly made false reports about the need for use of force and incarcerated individual's injuries, where the reports didn't hinder the incarcerated individual's ability to bring suit); see also Ambers v. County of Tippecanoe, Ind., Case No. 24-CV-51, 2024 WL 4785185, at *4 (N.D. Ind. Nov. 13, 2024) ("At base, even if [the plaintiff's] allegations are true and [the defendants] intentionally wrote deceptive incident reports, [the plaintiff] was not deprived of access to the courts (as plainly evidenced by this lawsuit).").

Finally, the plaintiff alleges that the defendants Vargas, Sharp, Seibel-Garvey and Schmitz retaliated against him by placing him back at jail based on two false allegations. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th

Cir. 2009)). The plaintiff has not satisfied the first or third elements of a retaliation claim. He may not proceed on a retaliation claim.

In summary, the plaintiff has stated an excessive force claim against John/Jane Doe defendants 1-5. The court will dismiss the remaining claims and defendants (except for Sheriff Severson, as explained in the next paragraph).

Because the plaintiff does not know the names of the Doe defendants he is suing, the court will not dismiss Waukesha County Sheriff Eric J. Severson and will keep him as a defendant for the limited purpose of helping the plaintiff identify the Doe defendants. See Donald v. Cook C'nty Sheriff's Dep't, 95 F.3d 548, 556 (7th Cir. 1996). Sheriff Severson must not respond to the complaint. After Sheriff Severson's attorney files an appearance in this case, the plaintiff may serve discovery upon Sheriff Severson—by mailing it to his attorney at the address in his notice of appearance—to get information that will help him identify the names of the Doe defendants. For example, the plaintiff may serve interrogatories (written questions) under Federal Rule of Civil Procedure 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not stated a claim against Sheriff Severson, his discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing. The plaintiff may not ask Sheriff Severson about any other topic, and Sheriff Severson is not required to respond to requests about any other topic.

After the plaintiff learns the names of the people whom he alleges violated his constitutional rights, he must file a motion to substitute their names for the Doe placeholders. Once the plaintiff identifies the defendants' names, the court will dismiss Sheriff Severson as a defendant. After the

defendants have an opportunity to respond to the plaintiff's complaint, the court will set a deadline for the parties to conduct further discovery. At that point, the plaintiff may use discovery to get the information he believes he needs to prove his claims.

The plaintiff must identify the names of the Doe defendants within sixty days of Sheriff Severson's attorney filing a notice of appearance. If he does not, or does not explain to the court why he is unable to do so, the court may dismiss his case based on his failure to diligently pursue it. See Civil L. R. 41(c) (E.D. Wis.).

### III.     Plaintiff's Emergency Motion for Court Recruitment of Counsel and Protective Order (Dkt. No. 9)

The plaintiff states that since he filed this case, his parole agent has repeatedly placed him back into Waukesha County Jail, where he nearly was killed, for unknown reasons. Dkt. No. 9. He states that he is in physical danger and asks the court to recruit *pro bono* counsel to handle service of process and protect him from "institutional retaliation." Id. The plaintiff states that he was sent back to jail on May 23, 2026, for unknown reasons and that his head was injured. Id. He asserts that he was released on May 27 "and yet another warrant was issued 2 days later but dropped." Id. The plaintiff currently is not confined at the Waukesha County Jail.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for

9

these cases.'" <u>Henderson v. Ghosh</u>, 755 F.3d 559, 564 (7th Cir. 2014) (quoting <u>Olson v. Morgan</u>, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" <u>Eagan v. Dempsey</u>, 987 F.3d 667, 682 (7th Cir. 2021) (quoting <u>Pruitt v. Mote</u>, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. <u>Watts v. Kidman</u>, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. <u>Pickett v. Chi. Transit Auth.</u>, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." <u>Eagan</u>, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." <u>Eagan</u>, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." <u>Pennewell v. Parish</u>, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." <u>Id.</u> This

10

includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff does not say that he tried to find a lawyer on his own, so he has not satisfied the threshold requirement for appointment of counsel. As described above, plaintiff must contact at least three lawyers and provide the court with the names of the lawyers he contacted and their responses, if any, to his request. Because the plaintiff has not shown that he made a reasonable attempt to find a lawyer on his own, the court will deny without prejudice his motion to appoint counsel.

The plaintiff also asks the court for a protective order. It is not clear what the plaintiff means by that. In federal civil cases, parties may ask the court for a "protective order" to enable them to exchange confidential discovery without concern that the other side will disclose the information improperly. The court assumes that this is not the kind of "protective order" the plaintiff is seeking. The court suspects that the plaintiff means the word "protective" in the personal safety sense; he is asking the court to issue an order requiring the jail to protect him from physical harm. But the plaintiff no longer is confined at the Waukesha County Jail, so his request is moot. The court will deny his motion for protective order.

11

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 9.

The court **DENIES** the plaintiff's motion for protective order. Dkt. No. 9.

The court **DISMISSES** defendants Amy Vaughn, Lt. Chamberlain, Elizabeth Vargas, Karen Sharp, Vicki M. Seibel-Garvey, ProHealth Waukesha Memorial Hospital and Karen Schmitz.

The court **ORDERS** that Waukesha County Sheriff Eric J. Severson shall remain as a defendant for the limited purpose of helping the plaintiff identify the Doe defendants' names.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Waukesha County Sheriff Eric J. Severson under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that Sheriff Severson is not required to respond to the complaint; however, he must respond to discovery requests that the plaintiff serves in an effort to identify the Doe defendants' names. Sheriff

Severson is not required to respond to discovery requests about any other topic.

The court **ORDERS** that the plaintiff must identify the Doe defendants' names **within sixty days of Sheriff Severson's attorney filing a notice of appearance in this case**. If the plaintiff does not identify the defendants' names by the deadline, or advise the court why he is unable to do so, the court may dismiss this case based on his failure to diligently prosecute it.

The court **ORDERS** that the plaintiff must pay the **$338.50** balance of the filing fee to the Clerk of Court.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 10th day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

14